UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARQUITOS MAURICE WHITELAW,

              Plaintiff,

    v.                                   Case No. 16-C-1601

CAPTAIN WESTRA, et al.,

              Defendants.

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Marquitos Maurice Whitelaw, an inmate serving a state prison sentence, filed this action under 42 U.S.C. § 1983, alleging that Defendants Brian Foster and Jeremy Westra violated his constitutional rights by denying him due process of law during a prison disciplinary proceeding. Although Whitelaw is currently incarcerated at Wisconsin Secure Program Facility, the events underlying his complaint occurred while he was housed at Waupun Correctional Institution (WCI). This matter comes before the court on the defendants' motion for summary judgment. ECF No. 24. Whitelaw did not file a response to defendants' motion within thirty days as required by Civil Local Rule 56(b)(2), and he has not requested additional time to file a response. This alone is grounds to grant the motion. Civil L.R. 7(d) ("Failure to file a memorandum in opposition to a motion is sufficient cause for the Court to grant the motion."). For this reason and based on the undisputed facts before the court, it is clear the defendants are entitled to judgment as a matter of law. The defendants' motion for summary judgment will therefore be granted.

## BACKGROUND

The events giving rise to the conduct report underlying Whitelaw's claim occurred on July 30, 2016. Def.'s Proposed Findings of Fact (DPFOF), ECF No. 26 ¶¶ 6–13.[1] That morning, Officer Carly Noe was working with another officer to distribute the morning meal in the Restrictive Housing Unit, where Whitelaw was housed. DPFOF ¶¶ 6, 8; *see also* ECF No. 29 ¶ 7. Noe distributed milk and bananas from a refrigerated cart while the other officer passed meal trays through each cell's trap door. DPFOF ¶¶ 7–8; *see also* ECF No. 29 ¶ 6–7. When the other officer opened Whitelaw's trap door to pass in a meal tray, Noe observed Whitelaw through the open trap as he removed his penis from his pants and began stroking it. DPFOF ¶¶ 10–11; *see also* ECF No. 29 ¶ 9. Later in the day, when Noe was delivering trays as part of the lunch meal distribution, she observed Whitelaw repeating that behavior. DPFOF ¶ 13; *see also* ECF No. 29 ¶¶ 10–11.

Following these incidents, Noe wrote a conduct report against Whitelaw for violating Wis. Admin. Code § DOC 303.14(1)(b), which prohibits inmates from "[e]xpos[ing] . . . [their] own intimate parts to another person for the purpose of sexual arousal or gratification." DPFOF ¶¶ 14–15; *see also* ECF No. 28-1 at 1–2. Defendant Westra was assigned as the hearing officer for the disciplinary hearing resulting from the conduct report. DPFOF ¶ 17; *see also* ECF No. 27 ¶ 6. A staff representative was assigned to assist Whitelaw in preparation for and during the disciplinary hearing. DPFOF ¶¶ 7, 29–30; *see also* ECF No. 27 ¶¶ 7–8, 15–16. After receiving notice of the

---

[1] All of the background facts come from the defendants' proposed findings of fact. Whitelaw has failed to respond to defendants' motion for summary judgment in compliance with Civil Local Rule 56(b)(2). Therefore, all facts within defendants' proposed findings of fact that are properly supported will be deemed admitted. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the non-movant as mandated by the local rules results in an admission.").

conduct report and disciplinary hearing, Whitelaw filed a form requesting that Noe and another officer attend the hearing as witnesses and that he be provided with the security camera video from his wing of the restrictive housing unit for 6:30 to 7:30 a.m. on the day of the incidents. DPFOF ¶¶ 20–21; *see also* ECF No. 28-1 at 3. Westra granted the request to require the witnesses to attend the hearing but denied Whitelaw access to the security camera video on the grounds that it was "not relevant to why [he] had [his] penis out." DPFOF ¶¶ 20, 22; *see also* ECF No. 28-1 at 3. Westra also informs the court that there is no camera located directly outside the cell where Whitelaw was located on the day of the incident and that the closest camera shows the entire corridor of nearby cells but not the inside of any individual cell. DPFOF ¶ 24; *see also* ECF No. 27 ¶ 11.[2]

At the disciplinary hearing, Whitelaw made a verbal statement asserting that Noe did not pass out breakfast trays on the day of the incident, but he said nothing regarding his behavior at the time of lunch distribution. DPFOF ¶¶ 25–26; *see also* ECF No. 28-1 at 6. Both officers testified at the hearing. When Whitelaw asked Noe whether she remembered passing out breakfast trays, she reiterated that she was passing out milk and bananas that morning. DPFOF ¶¶ 27–29; *see also* ECF No. 28-1 at 6–8. Finding the conduct report credible and noting that Whitelaw had been found guilty of similar conduct seven times in the preceding twelve months, Westra determined that it was more likely than not that Whitelaw engaged in the sexual conducted alleged in the report and therefore found him guilty. DPFOF ¶¶ 31–32; *see also* ECF No. 28-1 at 6. Westra ordered 120 days of disciplinary separation as a penalty. DPFOF ¶ 34; *see also* ECF No. 28-1 at 6.

---

[2] Due to the large size of video files, security footage from the cell halls is not normally retained and is instead constantly overwritten with new recordings. Although WCI has the ability to preserve a portion of a recording before it is overwritten, the recording Whitelaw requested was not retained in this case because the video footage was not accepted into evidence as part of the conduct report proceedings. DPFOF ¶¶ 41–42; *see also* ECF No. 30 ¶ 13.

Whitelaw appealed to Defendant Foster to review the disposition of the conduct report in his capacity as warden. DPFOF ¶ 38; *see also* ECF No. 28-1 at 9. Whitelaw argued that Westra's denial of access to the video denied him due process of law and prevented him from receiving a fair hearing. DPFOF ¶ 38; *see also* ECF No. 28-1 at 9. To conduct the appeal, Foster reviewed the entire conduct report record, which included Whitelaw's statement and the witness testimony at the hearing. DPFOF ¶ 39; *see also* ECF No. 30 ¶ 10. Although Foster does not recall whether he actually reviewed the video footage that Whitelaw requested, his normal practice is to review video footage when it is raised as an issue on appeal, so he believes he did do so in this case. DPFOF ¶ 40; *see also* ECF No. 30 ¶ 11. Foster determined that the finding of guilt and the disposition of the case were appropriate, so he affirmed Westra's decision. DPFOF ¶ 43; *see also* ECF No. 30 ¶ 12.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## ANALYSIS

Whitelaw alleges that Westra and Foster denied him due process of law by finding him guilty and imposing 120 days of disciplinary separation despite denying him access to the security video at his disciplinary hearing. "A prisoner challenging the process he was afforded in a prison

4

disciplinary proceeding must meet two requirements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir. 1994), which cited *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The court concludes that summary judgment in favor of the defendants is appropriate as a matter of law because Whitelaw did not possess a liberty interest in avoiding 120 days of disciplinary separation and he received constitutionally sufficient procedural protections.

**A. Liberty Interest**

As the Seventh Circuit has observed, the Supreme Court's decisions in *Sandin v. Conner*, 515 U.S. 472 (1995), and *Wilkinson v. Austin*, 545 U.S. 209 (2005), "establish that disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). In *Sandin*, the Court explained that an inmate has a liberty interest only in "freedom from restraint [that] . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484. Applying that standard in *Wilkinson*, the Court determined that conditions at a "Supermax" prison gave rise to a liberty interest because not only was "almost all human contact . . . prohibited" but placement was also indefinite and reviewed just once per year. 545 U.S. at 223–24. "Although relatively short terms of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest may arise from a long term of confinement combined with atypical and significant hardships." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Marion*, 559 F.3d at 697–98). Even a disciplinary segregation term of six months does not of necessity give rise to a protected liberty

interest in the absence of "conditions of confinement [that] are unusually harsh." *Marion*, 559 F.3d at 697–98 (citing *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995)).

Instructive in Whitelaw's case is the Seventh Circuit's decision in *Hardaway* concluding that an inmate fell short of demonstrating a deprivation of rights constituting an "atypical and significant hardship." 734 F.3d at 744. As relevant conditions of his 182-day disciplinary segregation, the inmate cited "his placement with a confrontational cell mate, the psychological issues he experienced in connection to his aversion to closed solid metal doors, and his weekly access to the shower and prison yard." *Id.* Although the Seventh Circuit acknowledged that "these conditions are more severe than those found in the general prison population," it went on to conclude that "they are hardly analogous to a confinement that deprives a prisoner of all human contact or sensory stimuli." *Id.* Consequently, the disciplinary segregation did not implicate a protected liberty interest.

If the conditions of the 182-day segregation in *Hardaway* did not give rise to a protected liberty interest, then it is easy to conclude that Whitelaw's 120 day disciplinary separation did not, either. At the outset, if six months are not sufficient to implicate a liberty interest in the absence of unusually harsh conditions, *see Marion*, 559 F.3d at 698, then neither should Whitelaw's fourth-month disciplinary disposition. Even considering the condition's of Whitelaw's disciplinary separation, they are notably less harsh than the conditions the Seventh Circuit reviewed in *Hardaway*. While in disciplinary separation, Whitelaw had access to the shower twice as often as the inmate in *Hardway*, and he had access to recreation up to four times as often. DPFOF ¶¶ 52–54; *see also* ECF No. 30-1 at 7–8, 12–13, 24. Moreover, there is no indication that the inmate in *Hardaway* had access to visits, phone calls, and legal recreation, which were all available to Whitelaw at WCI. DPFOF ¶¶ 50–51; *see also* ECF No. 30-1 at 18–19. The presence of these

additional opportunities for human conduct further indicate the reasonableness of Whitelaw's conditions, and the court therefore concludes that he did not have a protected liberty interest in avoiding 120 days of disciplinary separation.

## B. Due Process

Even assuming that Whitelaw was entitled to the high level of due process protections guaranteed when an increase in the length of an inmate's confinement is at stake, WCI's disciplinary procedures provided him with adequate due process. *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (holding that procedural due process protections apply to prison disciplinary proceedings that implicate an inmate's access to good-time credits that affect the length of the prison term). "In the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline that is supported by 'some evidence' in the record." *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003) (citations omitted) (citing *Wolff*, 418 U.S. at 564; *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454–44 (1985); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Whitelaw received all of those procedural protections as part of WCI's disciplinary process. After Noe filed the conduct report, Whitelaw received written notice of the upcoming disciplinary hearing as well as a copy of the underlying conduct report. DPFOF ¶¶ 16, 18. Before the hearing, he had the opportunity to request the attendance of witnesses and the use of documentary evidence. *Id.* ¶ 20. At the hearing itself, Whitelaw had the opportunity to testify, and both of his requested witnesses were required to attend and give evidence. *Id.* ¶¶ 20, 25, 27–28. After the hearing, Whitelaw received a written copy of Westra's decision, which included a summary of all testimony

given at the hearing as well as the reasons for the decision. *Id.* ¶ 36; *see also* ECF No. 28-1 at 6–8. Whitelaw likewise received a written explanation for Foster's denial of his appeal. ECF No. 28-1 at 9. Collectively, this written notice of the hearing, access to witnesses, opportunity to be heard, and written explanation for the disciplinary disposition provided Whitelaw with the procedural due process required by the Seventh Circuit and the Supreme Court when a prisoner's greatest liberty interests are at stake.

Westra's decision not to permit Whitelaw access to the requested security video for the disciplinary hearing, and Foster's affirmance of Westra's decision, does not diminish the due process protections that Whitelaw received. In fact, as noted above, the video was no longer necessarily in existence by the time of the hearing. Even if it had existed, failure to provide it would not have violated due process. As part of the process due in prison disciplinary proceedings, the Seventh Circuit has held that "an inmate is entitled to disclosure of material, exculpatory evidence in prison disciplinary hearings unless such disclosure would unduly threaten institutional concerns." *Piggie*, 344 F.3d at 678 (citing *Chavis v. Rowe*, 643 F.2d 1281, 1285–86 (7th Cir. 1981)). Here, however, the requested surveillance video would not have exculpated Whitelaw from the charges alleged. Because the surveillance camera could not see the interior of Whitelaw's cell, the security footage could not definitively prove that he did not engage in the alleged sexual conduct during the breakfast distribution. DPFOF ¶ 24. Whitelaw sought the morning surveillance video to advance his theory that Noe fabricated her conduct report and did not pass out breakfast that morning. *See* ECF No. 28-1 at 9. But there is no dispute that Noe worked in the segregation unit that morning, and although she did not pass out breakfast *trays*, she did participate in the breakfast distribution by handing out milk and fruit. DPFOF ¶¶ 8–10. Regardless of Noe's precise duties that morning, she

was indisputably on the unit throughout that morning and in a position to see Whitelaw exposing himself. Furthermore, Whitelaw sought surveillance video only for the morning of his alleged conduct, and the requested video therefore would have had no impact on the discipline imposed for his conduct that afternoon. Because the surveillance video would not have exonerated Whitelaw of the alleged conduct and he received discipline pursuant to procedures consistent with the protections afforded to the highest liberty interests available to an inmate, his due process claim fails as a matter of law.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment will be **GRANTED**. Although the defendants raise the defense of qualified immunity in their brief in support of their motion for summary judgment, the court need not reach that issue because summary judgment is appropriate based on Civil Local Rule 7(d) and as a matter of law with regard to Whitelaw's due process claim.

Dated this <u>8th</u> day of January, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court